### FILLEY and another *against* PHELPS and others.

Partnership debts are to be paid out of partnership funds.

The interest of one partner in the partnership property, is his share in the surplus, remaining after the payment of the claims against the partnership ; and that surplus alone is liable for his individual debts.

Any appropriation of the partnership property, by one partner, in payment of his individual debts, without the consent of his co-partners, is a violation of his duty, and a fraud upon them.

A creditor of one partner can only attach or levy his execution upon the partnership property, in such manner as to take that partner's interest therein, subject to the claims of all the partnership creditors.

On the 1st day of *June,* 1842, *A, B* and *C,* entered into partnership, in the business of keeping a livery stable, and as such partners, purchased of *D,* property necessary for conducting such business, to the amount of 8200 dollars, for which they gave their joint and several promissory notes, payable on the 1st day of *February,* in the years 1843, 1844, 1845 and 1846, respectively. In *August* 1842, *C* died; and the business of the partnership was continued by *A* and *B,* with the partnership capital, without any adjustment of the partnership concerns, until *May* 1844; during which time, they paid from the partnership funds, two of the notes to *D,* amounting to 4200 dollars, the other two being still unpaid. At the time of *C's* death, the partnership property was sufficient to pay the partnership debts; but the business was afterwards ruinous. *A,* being appointed administrator of *C,* sold, in *May* 1844, by order of the court of probate, and with the consent of *C's* heirs, one undivided third part of the partnership property then remaining, to *E,* for the use and benefit of *A ;* and *A* thereupon assumed the payment of that portion of the notes to *D,* which it belonged to *C* in his life-time to pay. On the 19th of *June* following, *A* settled his administration account, charging *C's* estate with 3002 dollars, on account of the notes given to *D,* and crediting that estate, with 2094 dollars, for the avails of the partnership property belonging to it, thus showing a loss resulting to it from the partnership concern of 908 dollars. After the death of *C,* new partnership debts were contracted, which are still unsatisfied. Some of these creditors brought suits on their respective claims against *A* alone, attaching his interest in the partnership property; which suits are still pending. In *April,* 1844, *A* executed a mortgage of all his interest in the partnership property to certain other creditors, to secure debts against him individually. *A* is entirely insolvent, and *B* has no estate, except his interest in the partnership property. On a bill in chancery, brought by the heirs of *C,* against *A* and *B,* and the attaching creditors and mortgagees of *A,* it has held, 1. that the notes given by *A, B* and *C,* to *D,* notwithstanding their form, constituted a partnership debt; 2. that the death of *C* dissolved the partnership then existing; 3. that upon this event, all the effects of the partnership vested in *A* and *B,* the survivors, who became bound to apply them in payment of the partnership debts, so far as they were needed for that purpose; 4. that although the notes given to *D* were, in form, several as well as joint, so that *D* could sustain an action at law thereon against *C's* administrator, without resorting to *A* and *B* as surviving partners, yet this did not vary the equitable rights of those interested in *C's* estate, nor prevent the interposition of a court of chancery, to apply the partnership effects in payment of the debt; 5. that the rights of those interested in *C's* estate were not impaired, by delay in closing the partnership concerns; 6. that they were not impaired in consequence of the sale to *A,* through the agency of *E ;* for whether *A* could, under the circumstances, be both seller and purchaser, or not, yet he received the property subject to the incumbrance of the notes to *D,* and it was still liable for the payment of those notes; 7. that the creditors of the partnership, whose debts were contracted after the death of *C,* were entitled to share in the partnership effects; 8. that those creditors who had brought

suits against *A* alone, and attached his interest in the partnership property, which suits were still pending, were also entitled to share in the partnership effects; 9. that the mortgagees and other creditors of *A* individually, could take nothing, except his share in the partnership property, remaining after payment of the partnership debts.

THIS was a bill in chancery, which was referred to a committee ; and the material facts found by them, and embraced in their report, are the following.

*Elihu Phelps, William P. Fay* and *Ansel D. Phelps,* on the 1st day of *June,* 1842, entered into partnership, in the business of keeping a livery stable, in the city of *Hartford;* and as such partners, purchased of *James Goodwin,* horses, carriages and other property, necessary for conducting their business, amounting to the sum of 8,200 dollars ; for which they gave him their four joint and several promissory notes, one for the sum of 2,200 dollars, and the others for 2,000 dollars each, payable respectively on the 1st days of *February,* in the years 1843, 1844, 1845 and 1846, with interest annually. The property so purchased, constituted their whole capital stock, in which they were equally interested.

The partnership continued until the 18th day of *August* following, when it terminated, by the death of *Ansel D. Phelps ;* at which time the partnership property was fairly worth the sum of 8,200 dollars. *E. Phelps* and *Fay,* notwithstanding the death of *Ansel D. Phelps,* continued the business, with the capital of the former partnership, as it had been conducted, without adjusting or settling the affairs of the former company, until the 16th day of *May,* 1844 ; during which time, they paid two of the notes to *Goodwin,* amounting to 4,200 dollars ; but their business was unprofitable and ruinous.

*Ansel D. Phelps* died intestate, leaving two sisters, *Rebecca C. Phelps* and *Susanna A. Gregory,* his heirs at law. In *September,* 1842, administration upon his estate was granted to *Elihu Phelps ;* and the two sisters of the deceased became his sureties in the administration bond. The interest of the deceased in the partnership property was inventoried, by the administrator, and appraised at 2,733 dollars, 33 cents, and his other estate, at upwards of 16,000 dollars.

In *October,* 1842, the court of probate made an order, authorising and empowering the administrator to sell, at public

or private sale, the personal estate of the deceased. And in *May*, 1844, *John E. Filley*, who had previously married *Rebecca C. Phelps*, and Mrs. *Gregory*, by a writing under their hands, authorized the administrators, as far as in them lay, to sell and dispose of one undivided third part of the partnership property, or one undivided third part of any portion thereof, without selling the other undivided parts, at public or private sale, at his discretion, and apply and appropriate the proceeds according to law.

*E. Phelps* afterwards, on the 16th day of *May*, 1844, nominally sold, at public vendue, one undivided third part of the partnership property then remaining on hand, to *Edson Fessenden*, for the sum of 970 dollars. *Fessenden* bought the property, at the suggestion of *E. Phelps*, and for his use and benefit, and never paid any thing for it, or took any conveyance or possession thereof. But the property continued to be used and employed by the surviving partners, as it previously had been, they regarding themselves as the owners thereof ; *E. Phelps* claiming two third parts, and *Fay* one third.

Afterwards, on the 19th day of *June*, 1844, *E. Phelps* settled his administration account with the court of probate, in which he charged himself with the sum of 1,894 dollars, 15 cents, as the amount for which he had sold the share of the partnership property belonging to the estate, including sales made prior to *May* 16th, 1844, and the sale of the residue to *Fessenden*, and the further sum of 200 dollars, as profits in the business over and above all expenses. He also charged the estate and credited himself, with the payment of one third part of the four notes to *Goodwin*, amounting to the sum of 3,002 dollars, 61 cents.

The committee found, that the sale to *Fessenden* was made at a fair price ; that *E. Phelps's* account of sales made before that time, was honestly rendered ; that *Filley*, who had been previously empowered, by Mrs. *Gregory*, to manage her interest as his own, was present at the sale to *Fessenden*, assisted *E. Phelps* in making his administration account, and was present and assented to the allowance of the same, by the court of probate. From the decree allowing the account no appeal has ever been taken. *E. Phelps* frequently advised with *Filley* in relation to the sale of the property ; and the

*Hartford,*
July, 1847.

Filley
*v.*
Phelps.

latter uniformly objected to any disposition thereof, unless at its first cost, which could never be obtained for it. But after the sale to *Fessenden*, he regarded the concern as the property of *E. Phelps* and *Fay.*

The surviving partners have never paid the two last described notes to *Goodwin*, upon which he has recovered judgment against *E. Phelps*, as administrator, before the city court holden at *Hartford* on the first *Monday* of *June*, 1846, for the sum of 5,049 dollars, 90 cents, damages, and for the sum of 6 dollars, 43 cents, costs of suit ; which sums are now due to *Goodwin*. *E. Phelps* has become entirely insolvent ; and *Fay* has no estate, except his interest in the partnership property ; and is jointly liable with *E. Phelps* and the administrator, to *Goodwin*, for the amount of the two notes.

On the 25th day of *April*, 1846, the president, directors, and company of the *Hartford Bank*, holding a note against the partnership of *E. Phelps* and *Fay*, for the sum of 800 dollars, a debt by them contracted subsequent to the death of *Ansel D. Phelps*, instituted a suit thereon against *E. Phelps* alone. And *Goodwin*, having a book debt against them for the sum of 248 dollars, contracted in like manner, instituted another suit against *E. Phelps* for the recovery of his debt. In both these suits, the interest of *E. Phelps* in the partnership property, was attached.

Several other creditors of *E. Phelps*, subsequently, on that and the following day, brought suits against him, and attached his interest in the partnership property. These several suits are still pending. *E. Phelps* also, on the 26th day of *April*, 1844, executed a mortgage of all his interest in the partnership property to *Edward A. Phelps* and *Elisha Moore*, for the security of certain claims in their favour against him.

The committee also found, that *E. Phelps* and *Fay*, on the 26th day of *April*, 1846, owed company debts other than those herein specified ; but to what amount, or what the condition of the company then was, they had not the means of determining.

On that day, there remained of the original property purchased before the death of *Ansel D. Phelps*, articles to the amount of 763 dollars ; the residue having been sold in the course of their business.

It appears also, that *E. Phelps* had advanced to the part-

nership the sum of 5,674 dollars, 70 cents; and *Fay*, the sum of 2908 dollars, 6 cents, more than they had respectively withdrawn, including in said sums, a reasonable compensation for their services; and that the two notes paid to *Goodwin*, were paid by *E. Phelps*, from the partnership fund, and charged to the partnership.

All the personal estate and a part of the real estate of *Ansel D. Phelps* was absorbed in the payment of his debts. *John E. Filley*, the husband of *Rebecca C. Filley*, and *Susanna A. Gregory*, died before the commencement of this suit.

The bill was brought by *Rebecca C. Filley* and *Eli Brown*, as the administrator of the estate of Mrs. *Gregory*, against *E. Phelps* and *Fay*, the attaching creditors and the mortgagees of *E. Phelps*—praying that a receiver might be appointed to take possession of all the partnership property, settle and adjust the partnership accounts, and pay the out-standing partnership debts; and praying also, for an injunction against the defendants in relation to further proceedings with the partnership property.

The injunction was granted and a receiver appointed. And the question arising upon the facts found by the committee, as to the disposition of the partnerships funds, was reserved for the consideration and advice of this court.

*Toucey* and *Matson*, for the plaintiffs, contended, 1. That on the death of one of several partners, the partnership effects must in equity be applied to the payment of the partnership debts. *Canfield* v. *Hard*, 6 *Conn. R.* 180. *Brewster* v. *Hammet*, 4 *Conn. R.* 540. *Witter* v. *Richards*, 10 *Conn. R.* 37. *Sto. Part.* 471. 475. 511, 12. And this equity extends not only to the stock brought in, but to every thing coming in lieu of it, during the continuance of the partnership, and after its dissolution. *Sto. Part.* 135, 6, 7, 8. *Coll. Part.* 65, 6. *Ridgley* v. *Carey*, 4 *Har.* & *McHen.* 167.

2. That the plaintiffs have done nothing to destroy this right; nor have they relinquished it in whole or in part. There has been no valid sale of an undivided third part of the partnership property; *E. Phelps* being both seller and purchaser. *Deveau* v. *Fowler*, 2 *Paige* 400. *Holderness* v. *Shackels*, 8 *B.* & *Cress.* 612. (15 *E. C. L.* 315.) *Banks* v. *Judah*, 8 *Conn. R.* 145. *Michoud* & al. v. *Girod* & al. 4

*How. R.* 503. 554, 5. *Davoue* v. *Fanning,* 2 *Johns. Ch. R.* 259, 260.

3. That the adverse claimants, being the separate creditors of *E. Phelps,* can take only the surplus which would belong to him after liquidating the concerns of the partnership. *Witter* v. *Richards,* 10 *Conn. R.* 37. *Thompson* v. *Rose,* 16 *Conn. R.* 80.

*Hungerford,* contra, without controverting the general principles laid down by the counsel for the plaintiffs, insisted, That upon the facts found by the committee, the plaintiffs had in equity no lien on the property in question. He remarked upon the property brought into the concern after the death of *A. D. Phelps;* the subsequent management of the survivors; the sale by *E. Phelps* in *May* 1844, which was by order of the court of probate and with the approbation of the representatives of *A. D. Phelps;* the settlement of *E. Phelps's* administration account, and its effect; the alleged delay in closing the partnership concerns; and other incidental topics. As to the effect of a sale of property by a trustee, which is purchased by him on his private account, he cited *Jennison* & al. v. *Hapgood,* 7 *Pick.* 1.

WAITE, J. The question in this case, is, in what manner the partnership funds of *E. Phelps* and *Fay,* are to be divided among the several claimants.

No rule in the law of partnership is more firmly established, and can be sustained by a greater array of authorities, than that partnership debts are to be paid out of partnership funds, in preference to debts against any individual member of the company. *Witter* v. *Richards,* 10 *Conn. R.* 37. *Barber* v. *Hartford Bank,* 9 *Conn. R.* 410. *Brewster* v. *Hammet* & al. 4 *Conn. R.* 340. *United States* v. *Hack* & al. 8 *Pet. R.* 275.

The interest* of one partner in the partnership property, is his share in the surplus, remaining after the payment of the claims against the partnership; and that surplus alone is liable for his individual debts. *United States* v. *Hack* & al. 8 *Pet. R.* 275. *Witter* v. *Richards,* 10 *Conn. R.* 37. *Holderness* & al. v. *Shackles,* 8 *B. & Cress.* 612. (15 *E. C. L.* 315.)

Any appropriation of the partnership property, by him, in

payment of his individual debts, without the knowledge or consent of his copartners, would be a violation of his duty, and a fraud upon them. *Rogers* v. *Batchelder* & al. 12 *Pet. R.* 221. *Yale* v. *Yale,* 13 *Conn. R.* 185.

A creditor of one partner can only attach or levy his execution upon the common property, in such manner as to take that partner's interest in the property, subject to the claims of all the partnership creditors. *Witter* v. *Richards,* 10 *Conn. R.* 37.

These are familiar principles, and we have only to enquire what debts are still due from the partnership, and what from one partner alone, and then apply the principles.

And first, with respect to the two notes given to *Goodwin,* by the three individuals composing the original partnership, and which still remain unpaid. They were given by them jointly and severally, and not in their company name. But the committee have found, that those three individuals had entered into a copartnership, and *as such partners* purchased certain property, and for it, gave the notes in question.

The property thus purchased, constituted their only capital, in which they were equally interested. And when two of the notes to *Goodwin* were paid, by the two surviving partners, they were paid out of the partnership funds, and the payments charged in their accounts. The notes, therefore, given to *Goodwin,* notwithstanding their *form,* constituted a partnership debt, and, as such, was recognized by the surviving partners.

The death of *Ansel D. Phelps,* one of the three original partners, dissolved the partnership then existing. *Pitkin* v. *Pitkin,* 7 *Conn. R.* 307. *Sturges* v. *Beach,* 1 *Conn. R.* 507. *Burwell* v. *Mandeville's* exr. 2 *How. R.* 576. *Chapman* v. *Beckington,* 3 *Ad. & Ell. N. S.* 703. (43 *E. C. L.* 934.)

All the effects of the company, upon his death, by law vested in the two survivors, who became bound to apply them in payment of the partnership debts, so far as they were needed for that purpose. And had there been any creditors of the partnership, holding any joint obligations against them, they would be obliged to resort, in the first instance, to the surviving partners for the payment of their claims, and could resort to the estate of the deceased only in case of their insol-

vency.    *Sturges* v. *Beach*, 1 *Conn. R.* 507.  *Alsop* v. *Mather*,
8 *Conn. R.* 584.  *Egberts* v. *Wood* & al. 3 *Paige* 517. 526.

Had, therefore, the notes to *Goodwin* been only joint notes,
his remedy upon them would have been against the two sur-
vivors, and he could not resort to the estate of the deceased,
until they had become insolvent.   But the notes having been
given by the makers severally, as well as jointly, he acquired
a more extended remedy, and could sue the administrator of
the deceased, without making any efforts to enforce his claim
against the survivors.

But although the form of the notes gave the creditor an
immediate remedy against the estate of the deceased, it did
not vary the equitable rights of those interested therein.
They continue the same, whatever may be the form of the
security.

Whenever the creditor of a firm attempts to appropriate
the estate of a deceased partner to the payment of his debt,
those interested therein are entitled to the aid of a court of
chancery, for the purpose of having the partnership effects
applied in payment of the debt, and in exoneration of the
estate.) Such was the law, applicable to the case, upon the
death of *Ansel D. Phelps*.   Has any thing been done since,
to affect or impair the rights of those interested in his estate ?

In the first place, a considerable period has elapsed since his
death, and the business of the original company has not been
closed.   But it is to be remembered, that the notes in ques-
tion were not payable until long after his decease.   He died
in *August*, 1842, and one of the notes was payable in *Febru-
ary*, 1845, and the other in *February*, 1846.   The creditor
was not entitled to payment until his notes became due ; nor
were the surviving partners under any obligation to pay them,
before that time.

*Filley*, who married one of the sisters and heirs of the de-
ceased, and acted as the agent of the other, assented to a
delay until 1844, wishing doubtless to avoid loss to the estate,
by any sacrifice of their interest in the company property.  But
even that delay was productive of a very serious loss.   For
the committee have found, that upon the death of *Ansel D.
Phelps*, the property of the company was sufficient for the
payment of their debts.   And yet the administrator, in his
account settled with the court of probate in 1844, has charged

the estate with upwards of 3000 dollars, on account of the *Goodwin* notes, and credited less than 2,100 dollars, for all the avails of the partnership property belonging to the estate, thereby, in effect, charging to the estate a loss of more than 900 dollars, on account of the partnership concern.

We do not, therefore, see how the delay in the payment of the notes to *Goodwin*, under the circumstances, can impair the rights of the heirs of the deceased partner. The surviving partners clearly have no right to complain; for they at all times possessed the power of closing up their business, and disposing of their effects.

We come next to the sale to *E. Phelps* in 1844, through the agency of *Fessenden.* It is insisted, on the part of the plaintiffs, that the sale was void, as *Phelps* could neither directly nor through the agency of another, become the purchaser of property sold by him as administrator; and consequently, the rights of these plaintiffs remain the same as if no change had been made in the partnership concern, subsequent to the death of *Ansel D. Phelps.*

It is undoubtedly a general rule, that an executor or administrator, selling property belonging to the estate of a deceased person, cannot become the purchaser for his own use, at least without the assent of those interested in the estate. *Johnson* v. *Blackman*, 11 *Conn. R.* 357. *Banks* v. *Judah*, 8 *Conn. R.* 157. *Michoud* & al. v. *Girod* & al. 4 *How. R.* 503.

But it is very questionable whether it is not now too late for these plaintiffs to avail themselves of the application of that rule, after all that has been done by those interested in the estate, with knowledge of the circumstances attending the sale, and after the settlement made before the court of probate.

We deem it, however, unnecessary to determine this question, or the effect of the rule, if applied to the case, because, in our opinion, the result will be the same, whether it be so applied or not.

It is apparent from the report of the committee, that *E. Phelps*, upon the purchase of the company property, assumed the payment of that portion of the notes to *Goodwin*, which belonged to the deceased in his life-time, to pay. Indeed, his administration account clearly shows that. The estate received nothing from that property; but on the contrary, he received more than 900 dollars from the estate, on account of

*Hartford,*
July, 1847.

Filley
*v.*
Phelps.

his taking the property and assuming the partnership debts. He therefore took the property subject to the incumbrance of the notes to *Goodwin.*

And why should he not fulfill the contract which he has thus voluntarily assumed ? If he does, who will be injured ? *Fay,* the other partner, will not ; because his share will be no further liable than it originally was. He has one third part of the property, and is liable for only one third part of the debt. *E. Phelps* has two thirds of the property, and is liable for the remaining two third parts of the debt—one third, by virtue of the original purchase from *Goodwin,* and the other, by virtue of the purchase from the estate of *Ansel D. Phelps.*

The subsequent partnership creditors will not be affected, by the substitution of *E. Phelps,* in the place of the heirs of the deceased partner : for in neither case, will the heirs be liable for their debts. *Pitkin* v. *Pitkin,* 7 *Conn. R.* 307. *Burwell* v. *Mandeville's* exr. 2 *How. R.* 576.

The notes, therefore, remaining due to *Goodwin,* still remain in equity a debt due from *Phelps* and *Fay,* the surviving partners. To meet which, they have the avails of all the original partnership effects, except so far as they have become diminished, by their own acts, in continuing their business. And these effects are liable for this debt, in the same manner as they would be for any other partnership debt by them contracted. *Deveau* v. *Fowler,* 2 *Paige* 400.

But the report of the committee shows, that there are other partnership debts contracted since the death of *Ansel D. Phelps.* We see no reason why these creditors are not entitled to share in the joint effects. The property received from them may have gone to increase the funds now on hand, in the same manner as the property purchased of *Goodwin.* These plaintiffs, by lying still and suffering the surviving partners to continue the business, and contract other debts, thereby increasing their property, as well as their liabilities, have no right to exclude such creditors from a participation in that property. While they are not to suffer, by their delay, they are not to gain, at the expense of others, who dealt in good faith with the partners.

The debts due to the *Hartford Bank* and to *Goodwin,* require further consideration. The committee have found, that they are due from *E. Phelps* and *Fay,* as partners ; and yet

these creditors have brought their suits against *E. Phelps*
alone, and attached only his interest in the partnership pro-
perty.

Had they brought their suits against both, instead of one,
and attached their joint property, they would have acquired,
under our attachment law, liens upon the property so attached,
which would give them a priority over all the other creditors,
and of which a court of chancery could not deprive them.
But instead of bringing suits in that form, they have sued *E.
Phelps* alone, and attached only his interest. So far as the
liens, thus acquired, are concerned, they stand precisely in the
same situation as the other creditors of *E. Phelps*, who have,
in like manner, brought their suits against him, and attached
only his interest in the property.

Had these suits in favour of the *Hartford Bank* and of
*Goodwin* actually gone into judgment against *Phelps* alone, a
question might arise, whether their debts against the partners,
would not have become merged in those judgments, and
whether they could afterwards resort to the partnership funds.
*Pierce* v. *Kearney*, 5 *Hill* 82. *Ward* v. *Johnson* & al. 13
*Mass. R.* 148. But the committee have found, that those
suits are still pending, and that no such judgments have been
rendered; consequently, the effect that would be produced
by such judgments, need not be considered. We therefore
see no reason why these creditors are not entitled to share in
the partnership funds, in the same manner as if they had
never brought their suits.

As it regards the creditors of *E. Phelps* alone, they can
take nothing, either by virtue of their attachments, or in any
other manner, except his share in the joint property remaining
after the payment of the partnership debts. The same rule
applies to those defendants, who claim under the mortgages
given by *Phelps*.

Our advice therefore to the superior court, upon the facts
presented to us in the report of the committee, in this case, is,
that the partnership funds in the hands of *E. Phelps* and *Fay*
are to be applied in satisfaction of the partnership debts, in
proportion to their respective amounts, including in such debts
the amount of the two notes given to *Goodwin*, his book
account, and the debt due the *Hartford Bank*. And if any
surplus should remain, after the payment of such debts, the

*Hartford,*
*July, 1847.*

Filley
*v.*
Phelps.

attaching creditors and mortgagees of *E. Phelps,* will be entitled to his interest in the same, in the order of their respective liens, to be applied in satisfaction of their respective claims.

In this opinion the other judges concurred, except ELLSWORTH, J., who gave no opinion, having been of counsel in the cause.