### NEW YORK COMMERCIAL CO. v. FRANCIS et al.

(Circuit Court of Appeals, Second Circuit. December 1, 1897.)

#### No. 69.

1. CORPORATIONS—RIGHTS OF EQUITABLE OWNER OF STOCK—ATTACHMENT BY CREDITOR OF NOMINAL OWNER.
    Neither by the general rule nor under the decisions of the state courts of Connecticut is the beneficial owner of stock in a corporation precluded from asserting his right thereto by the mere fact that he has permitted it to stand on the books of the corporation in the name of another, as against an attaching creditor of the nominal owner.

2. EQUITY—INJUNCTION—BILL TO PROTECT ATTACHMENT LIEN.
    A plaintiff in an action in the state court, who has, by attachment, obtained a lien on property alleged to belong to the defendant, may, pending the action, and before judgment, maintain a bill on the equity side of the United States circuit court to protect such lien by preventing the threatened sale of the property under an execution issued from that court, whereby the plaintiff's lien would be lost.

Appeal from the Circuit Court of the United States for the District of Connecticut.

Bill by the New York Commercial Company against Henry H. Francis and others. From an order granting an injunction pendente lite, defendant Francis appeals.

On June 4, 1896, Henry H. Francis, of Connecticut, brought suit in the proper state court of Connecticut against Joseph P. Earle, of New York, to recover a claim against him individually, and attached 76 shares of the stock of the Seamless Rubber Company, a Connecticut corporation, which stock stood upon

the books of said company in his name. This suit was properly removed by the defendants to the circuit court of the United States for the district of Connecticut. Judgment was rendered by said court, in April, 1897, against Earle. Execution was issued thereon, and on June 4, 1897, Farrell, as deputy marshal, commenced to levy upon the 76 shares as the property of Earle. On June 30 and July 1, 1896, the New York Commercial Company brought two suits in the proper state court of Connecticut against the co-partnership of Earle Bros., of which Joseph P. Earle was a member, to recover claims against the firm, and attached the same 76 shares. These suits are still pending in the state court. On June 14, 1897, the New York Commercial Company filed a bill in equity in the circuit court for the district of Connecticut against Francis, Joseph P. Earle, and Farrell, alleging that the 76 shares were the property of Earle Bros., and not the property of Joseph P. Earle; that they were about to be sold on execution as his property, whereby the lien of said company would be lost; and praying for an injunction, and other relief. An order for an injunction pendente lite against the sale of said stock was granted, from which order this appeal was taken. On June 28, 1897, the three members of the co-partnership of Earle Bros. filed a petition to intervene in this suit for the protection of their interest in the stock, which application was granted. The brief affidavits for the complainants in the case state that in 1882 Earle Bros. bought with partnership funds 38 shares of the stock of the Seamless Rubber Company; that the certificate was taken in the name of Joseph P. Earle with the understanding that he held the stock in trust for, and that its beneficial ownership was in, the firm; that in 1892 a stock dividend was declared by the rubber company; that an additional certificate for 38 shares, which was issued to Joseph P. Earle, was Earle Bros.' dividend on the stock standing in their name and in the name of Joseph P. Earle; that the beneficial ownership of the entire 76 shares was in the firm, and that the cash dividends on these shares were received and used by it. Francis says, in his affidavit, that before his attachment he ascertained from examination of the public records in the office of the town clerk of New Haven, and from conversation with the officers of the rubber company, that Joseph P. Earle was one of its stockholders, that the company had no notice of any ownership by any one else, that said Earle spoke of the stock as "my stock," and said that he owned the entire capital and property of the firm, and that the other members were merely interested in the profits.

Theo. M. Malthie, for appellant.

Wm. L. Bennett, for appellee.

Before LACOMBE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge (after stating the facts). The affidavits in the record show some of the assertions of the respective parties, but sufficient facts are not given from which a trior can form an opinion as to their truth. The complainant's principal affidavit, which was carefully drawn for the purpose of presenting one aspect of the facts, may be true, so far as it relates to the purchase of the stock, and yet not be inconsistent with the facts which are said to have been stated by Joseph P. Earle, so that the real ownership of the stock, as between the firm and Joseph P. Earle or the other members of the partnership, cannot be ascertained from the papers now in the record. It is, therefore, only possible to state what we deem to be the existing law of Connecticut upon the respective claims of the parties, and we refer particularly to the law of Connecticut, because the early decisions of its courts in regard to the transfer of stock in a corporation depended largely upon the construction which they gave to the legislative acts incorporating the corporations of the state. Formerly, in Connecticut, a strict compliance with the mode prescribed in the act of incorporation for the

transfer of stock was deemed necessary. It was said in one case, in construing the language generally used in the charters, that the transfer on the books of a company "is a fact essentially necessary to originate a title." Northrop v. Turnpike Co., 3 Conn. 544. As the corporate books alone informed the public of any change of possession of stock, it was also held that the withholding from registry of the assignment and transfer of stock by a vendor was a badge of fraud, like his retention of the possession of a chattel which he had sold. The principle is stated in Colt v. Ives, 31 Conn. 35, as follows:

"In the case of purchase of stock in a corporation there must be such a transfer of it as the legislature in the charter or by statute prescribes, and notice of the assignment of choses in action, and the transfer required by statute of corporate stock, stand in lieu of the taking and retaining of the possession of personal chattels sold, being the only possession the nature of the case admits of."

The tendency of the courts of Connecticut was also favorable to attaching creditors as against persons guilty of laches or fraud in the retention of possession of chattels, or in not conforming to the system of registry of the transfers of stock, and it was, therefore, said in Dutton v. Bank, 13 Conn. 498, that:

"An attaching creditor is not bound to look beyond the books of a bank to ascertain whether a debtor has made any assignment of the stock standing in his name. The books of the corporation are the appropriate place to determine the ownership of stock."

A literal adherence to this dictum, as between a creditor and a debtor who had made an assignment of stock in a corporation, and had done all in his power to cause a transfer upon its books, and to perfect the title in the vendee, was not acceded to in Colt v. Ives, supra.

This case does not relate to the right to the ownership of stock as between an attaching creditor of a vendor and a vendee whose title had not been perfected by a transfer upon the books of the corporation, but it relates, as claimed by the complainant, to the equities as between an attaching creditor of the person who has the bare legal title to the stock and the attaching creditor of the person who has the beneficial interest or equity in it, for in Connecticut "any right, legal or equitable, in such stock, may be taken by ordinary attachment." Bank v. Jarvis, 33 Conn. 372; Winslow v. Fletcher, 53 Conn. 390, 4 Atl. 250. It is true that it has been thought, in view of the early decisions which have been referred to, and especially in view of the declaration in Dutton v. Bank, supra, that the rights of a person who, in the absence of actual or constructive fraud, had permitted his stock to stand upon the books of a corporation in the name of a third person, were inferior to those of an attaching creditor of such third person, but such a doctrine is not now in accordance with Connecticut decisions. It was declared in Mowry v. Hawkins, 57 Conn. 453, 18 Atl. 784, that:

"In the absence of fraud, stock may stand in the name of one which belongs to another, without being liable to attachment for the debts of the nominal owner. This must be so as to all creditors who have not been misled or deceived by it, and as to those who are advised as to the true state of the title."

This statement was not absolutely necessary to the disposition of the case, for it was found that the certificate of the attached stock was issued to James D. Mowry, the attached debtor, instead of to James D. Mowry, trustee, by a mistake of the secretary of the company, which Mowry did not notice at the time, and it may fairly be inferred from the known facts in the case that the cestui que trust was also ignorant of it; but the proposition as announced by the court was referred to in Skiff v. Stoddard, 63 Conn. 198, 26 Atl. 874, and 28 Atl. 104, as established. It is one which we are satisfied is in accordance with the general rule, and with the principles of justice, unless the equitable owner is prevented by an estoppel from showing the truth, or there has been some illegality or violation of a statutory requirement. Cooper v. Griffin [1892] 1 Q. B. 740. In this case the facts in the case are so scantily presented in the affidavits that it is impossible to say what they are. All that can be said is that the complainants made out a bare prima facie case, and, as their statements were not denied by reliable testimony, the order pendente lite was properly made, and should be continued until it is ascertained whether Earle Bros. are the equitable owners of the stock, and, if they are, whether their equities have become subordinate to those of Francis by their laches or by their conduct. The appellee urges that the complainants had no standing upon the equity side of the court, because they had recovered no judgment, and it was not, therefore, apparent that a resort to equity was necessary. The general principle to which reference is made is not applicable here, because, as it is declared in Case v. Beauregard, 101 U. S. 688, "whenever a creditor has a trust in his favor, or a lien upon property for the debt due him, he may go into equity without exhausting legal processes or remedies"; and "when the bill asserts a lien or a trust, and shows that it can be made available only by the aid of a chancellor, it obviously makes a case for his interference." The bill in this case was one of which the circuit court had jurisdiction. It was not an original suit, but was ancillary, and was filed on the equity side of the court for the alleged purpose of preventing injustice to the complainant by the levy of an execution issuing from the same court. Freeman v. Howe, 24 How. 450; Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27. The order is affirmed, with costs.