NEW YORK COMMERCIAL CO. v. FRANCIS et al.

(Circuit Court, D. Connecticut. August 16, 1899.)

No. 925.

ESTOPPEL—PERMITTING CORPORATE STOCK TO STAND IN ANOTHER'S NAME.

The fact alone that a partnership owning stock in a corporation allows it to stand on the books in the name of one of the partners, in order to qualify him to act as a director, does not create an estoppel against the firm or its creditors which will render the stock subject to the individual debts of such partner, although he may have represented himself as the owner, and secured credit thereby, where it is not shown that his creditors knew that the stock stood in his name, or were influenced by the fact.

This was a bill for an injunction to prevent the sale on execution of stock in a corporation on which complainant had levied an attachment in an action in a state court.

W. L. Bennett, for complainant.

T. M. Maltbie, for defendant Francis.

J. K. Beach, for defendants Earle Bros.

TOWNSEND, District Judge. Final hearing on bill and answer. From an order granting an injunction pendente lite the defendant appealed, and the circuit court of appeals discussed the facts set out in the affidavits of the parties, and held "the order pendente lite was properly made, and should be continued until it is ascertained whether Earle Bros. are the equitable owners of the stock, and, if they are, whether their equities have become subordinate to those of Francis by their laches or by their conduct." The relations of the parties and their respective claims sufficiently appear from the report of said case. 28 C. C. A. 199, 83 Fed. 769. Each of the parties claims a lien by attachment on 76 shares of stock of the Seamless Rubber Company, standing on the books of said company in the name of said J. P. Earle, but claimed by complainant to be the property of said partnership of Earle Bros. The court of appeals quotes the following language from Mowry v. Hawkins, 57 Conn. 453, 18 Atl. 784:

"In the absence of fraud, stock may stand in the name of one which belongs to another without being liable to attachment for the debts of the nominal owner. This must be so as to all creditors who have not been misled or deceived by it, and as to those who are advised as to the true state of the title."

The court then says of the rule thus established:

"It is one which we are satisfied is in accordance with the general rule, and with the principles of justice, unless the equitable owner is prevented by an

estoppel from showing the truth, or there has been some illegality or violation of a statutory requirement." Cooper v. Griffin [1892] 1 Q. B. Div. 740.

It now appears from the uncontradicted evidence that in May, 1882, the partnership of Earle Bros. made a bargain with the owners of said stock to purchase 153 shares thereof; that a certificate for 115 shares in the name of Earle Bros. was delivered in May, 1882, and a certificate for the remaining 38 shares, in the name of J. P. Earle, was delivered in the autumn of said year; that subsequently, in 1892, a stock dividend of 100 per cent. was declared; and that a certificate for 115 additional shares was made out in the name of Earle Bros., and for 38 additional shares was made out in the name of J. P. Earle, which, with the preceding 38 shares, make up the 76 shares here in controversy. The testimony and books support the claim that, although the certificates were delivered in two lots, they were parts of one agreement for the purchase of a lot of 153 shares. The whole of said stock was paid for by said partnership, which, since its purchase, has been continuously in possession of said certificates, and has used the stock as its own as collateral for firm loans, and has received and appropriated the dividends therefor. It further appears from the testimony of William P. Earle that said stock was placed in the name of J. P. Earle to qualify him to act as a director in said Seamless Rubber Company. This evidence is practically uncontradicted. I therefore find that Earle Bros. are the equitable owners of said stock.

I have not overlooked the arguments of defendant that Joseph P. Earle, having furnished substantially the entire capital of said firm, when the surplus earnings were invested took the 38 shares of stock as his extra share, nor the inference drawn by counsel for defendant from the entries in the private ledger, nor the contention that Henry Earle did not become a member of said partnership till 1893, and that he never had any interest in said stock except as trustee for Joseph and William Earle, and that Joseph P. Earle withdrew from the firm, because a careful examination of the evidence fails to disclose any sufficient or satisfactory proof to support said contentions, assuming them to be material to the issue herein. It does not appear except from Joseph P. Earle's statements that he took said stock as his extra share. Such statements by Joseph in his own favor are insufficient to support the claim of the defendant herein, claiming through said Joseph P. Earle, as against the complainant claiming through Earle Bros. Furthermore, their truth is disproved by the facts above stated. That Henry Earle did become a partner in said firm is directly proved by uncontradicted testimony, and the agreement between complainant and Earle Bros. shows that in 1898 Joseph P. Earle was a member of said firm. The single contention on the part of defendant which deserves serious consideration is stated by defendant's counsel as follows:

"In this case the question of equitable estoppel arises. One of the partners represents himself as the owner, individually, of certain property which stands in his individual name, and thereby induces the defendant to give him personal credit for a large amount."

The court of appeals has held that the record entries of Joseph P. Earle's ownership are not alone conclusive. The other fact relied on and proved is that said Joseph P. Earle did represent himself to defendant as the owner of this stock. That the beneficial owners of the stock allowed it to stand in the name of another in order to qualify him to be a director is no ground of estoppel, for an estoppel cannot be founded on a statement of the truth or on the doing of a lawful act. Cooper v. Griffin [1892] 1 Q. B. Div. 740; Howard v. Sadler [1893] 1 Q. B. Div. 1. In the latter case the court says:

"It is also contended that the directors of the Great Western Railway Company [the beneficial owner] enabled Sadler to commit a fraud by obtaining credit on the faith of his possession of the shares; but what they did was lawful, for allowing Sadler's name to remain on the register did not, as the law has been decided, imply that he was the beneficial owner of the shares. According to the decisions, the directors made no misstatements, for what they allowed to be stated was the truth, and therefore there can be no estoppel."

Earle Bros. made no representations other than suffering the stock to stand in Joseph P. Earle's name in order to qualify him to act as a director, and it is not alleged in the pleadings, or claimed in the proof, that the defendant knew of such entry, or was induced to act, or changed his position, by reason thereof. Although Joseph P. Earle, without the knowledge of Earle Bros., did make such representations, and defendant acted thereon, this does not constitute an estoppel against them, although it would have estopped Joseph P. Earle. Mowry v. Hawkins, 57 Conn., at page 460, 18 Atl. 784.

The question submitted by the court of appeals to this court as to the partnership of Earle Bros. was "whether their equities have become subordinated to those of Francis by their laches or by their conduct." I fail to find any evidence of laches or inequitable conduct which can be brought home to said partnership. Especially do I find that the essential element of an estoppel, inducement to act by false representations by one on whose representations reliance may be lawfully placed, is not proved. A decree may be entered accordingly.