## NEW YORK COMMERCIAL CO. v. FRANCIS.

(Circuit Court of Appeals, Second Circuit. April 3, 1900.)

### No. 133.

1. PARTNERSHIP—RIGHTS OF CREDITORS—WHAT IS FIRM PROPERTY.

Where a partnership, after taking in a new member, treated property of the old firm as that of the new, pledging the same for its debts, the presumption is that such property constitutes assets of the new firm as to its creditors, although the new partner contributed no capital, and there was no agreement between the partners as to the ownership of such property.

2. SAME—ATTACHMENT OF FIRM PROPERTY BY CREDITOR OF PARTNER.

An individual creditor of a partner, who attaches partnership property for his debt, acquires a lien upon the interest of his debtor in the attached property subordinate to that of partnership creditors who attach subsequently.

Appeal from the Circuit Court of the United States for the District of Connecticut.

Theo. M. Maltbie, for appellant.

Wm. L. Bennett, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. The general questions of fact which arise under the bill in equity in this case and the object of the bill are stated in the opinion of this court upon the appeal from a decision of a motion for a preliminary injunction, and reported in 28 C. C. A. 199, 83 Fed. 769. The questions now arise upon the defendant's appeal from the decision of the circuit court upon final hearing. 96 Fed. 266. Joseph P. Earle and William P. Earle went into partnership in 1877, as brokers in India rubber, under the firm name of Earle Bros., without articles of partnership, and each member drew from the firm "whatever suited" him. The state of the partnership accounts of the firm as between themselves, or of its successor, has never been ascertained. The firm had a capital, but how much it was does not appear. It was probably substantially contributed by Joseph. In June, 1882, Earle Bros. agreed to buy 153 shares of the

stock of the Seamless Rubber Company, a corporation established in New Haven, Conn., and in that month gave for 115 shares the firm's note for $14,858.06, which were subsequently paid by checks of the firm. In September, 1882, they gave for 38 shares the firm's note for $5,890 and interest, and subsequently paid the note with the firm's check for $6,069.64. A certificate for 115 shares in the name of Earle Bros., and a certificate for 38 shares in the name of Joseph P. Earle, were received by the firm, and still continue in the possession of Earle Bros. The reason given by William for the certificates being made in the name of Joseph is inadequate, but the fact is that all the bookkeeping entries are in accordance with a purchase by the firm, and no part of the price of the 38 shares was charged to Joseph on the books. In 1892 the Seamless Rubber Company made a stock dividend of 100 per cent., and issued certificates for 115 shares to Earle Bros., and a certificate for 38 shares to Joseph. These certificates were taken into the possession of the firm, the dividends on the entire 306 shares were received and used by it, and the 76 shares were hypothecated for debts of the firm due to the Seventh National Bank of New York from September, 1892, to March, 1895, and from July, 1896, to January, 1897. Between 1885 and 1890, Henry Earle came into the firm of Earle Bros. The date is uncertain, because he was insolvent in 1885, and he came in, according to William's testimony, "when it suited him to decide to be a member." He contributed nothing to the firm, there were no written articles of partnership, there was no understanding as to the amount that any one should receive from the business, the accounts of the former partners were not balanced, the condition of the firm was not ascertained, and no change was made in the books. An account called the "Henry Earle, Trustee, Account" was opened in 1888, and continued till 1895, in which the entries of dividends of the Seamless Rubber Company were made. Apparently the name of the account indicated nothing in regard to the title to the stock. If the question of the ownership of this stock rested upon the oral testimony of William and Henry Earle, the complainant's case would not have been proved; but the books of the firm show not only that the stock was bought, paid for, and used by the firm, but that no part of the payments was ever charged to Joseph, while all his other private investments, and whatever payments were made for him personally, were charged to him individually, and no accounts were kept with the corporations in which Joseph individually owned stock. Joseph did not receive any dividends from the Seamless Company, except as they swelled the firm assets, from which he drew as he pleased. The books were kept by a bookkeeper, who is apparently indifferent between the parties, and the facts as they appear on them compel an agreement with the circuit court in its finding that the original firm of Earle Bros. paid for the 76 shares, and continued to be the equitable owners thereof. Joseph Earle was not called as a witness by either party. He is suffering from locomotor ataxia, and mental deterioration has gradually developed.

In December, 1893, the New York Commercial Company entered into an agreement with William P. Earle and Henry Earle, to which

Joseph assented, that all business in crude rubber should be transacted by William and Henry, in the name of Earle Bros., and for account of the Commercial Company, which was to have the gains and bear the losses, and that the two Earles were to receive as full compensation for their services $16,000 per annum, one-half to be paid to each. In other words, by virtue of this singular contract, William and Henry were to divide the compensation, but the partnership of Earle Bros. was to bear the hazards of their indebtedness, if any, to the Commercial Company. For a debt of Joseph P. Earle to Henry H. Francis he has attached the 76 shares of the Seamless Rubber stock in the name of Joseph. Subsequently, for two alleged debts of Earle Bros. which accrued after December, 1893, the Commercial Company attached the stock of the Seamless Rubber Company standing in the name of Earle Bros. and of Joseph P. Earle. If the 76 shares belonged to the present partnership of Earle Bros., Francis secured by his attachment only the separate interest of Joseph P. Earle in the partnership property, subject to the partnership debts, and, if partnership creditors had not attached the same property, he could have levied upon the interest of Joseph, if any, in the property after payment of the partnership debts. He could not levy upon the whole property. "The purchaser takes the same interest in the property which the judgment debtor would have upon a final adjustment of all the accounts of the partnership. It is not only an undivided, but an unascertained, interest, and the purchaser is substituted to the rights and interests of the judgment debtor in the property sold. Neither does the sale transfer any part of the joint property to the purchaser, so as to entitle him to take it from the other partners; for that would be to place him in a better situation than the partner (judgment debtor) himself. The remedy of the purchaser is to go into equity and call for an account, and thus entitle himself to the interest of the judgment debtor, if any, after the settlement of the partnership liabilities." Clagett v. Kilbourne, 1 Black, 346, 17 L. Ed. 213; Hannon v. O'Dell, 71 Conn. 698, 43 Atl. 147. In Connecticut, such a bill in equity can be brought pending the attachment before a levy of execution, under the provisions of section 1316 of the Revised Statutes. Hannon v. O'Dell, supra.

In this case, the partnership attaching creditors are those of the present firm of Earle Bros., and the question in regard to their right to priority is whether the property is partnership property of the present firm. It was among the assets of the original firm, but it is said that when Henry Earle became a new member he brought no capital, bought no interest in the old assets, but simply brought his services, and was entitled to nothing save a share in the profits. When he became a partner, the former members could have made whatever contract they chose, in the absence of fraud towards existing creditors respecting the partnership assets, and could have made them separate property, and placed the stock in their individual names. Nothing of the sort was done, no agreement as to ownership was made, and Henry entered the firm with no contract, except that he was to be a partner. The other members per-

mitted him to manage the finances, pledge the new and old certificates for new debts of the firm, and to receive the dividends as firm property, and, although they contributed the whole capital, in the absence of an agreement that it should remain their property, and in the existence of this conduct on their part, the capital must be presumed to have become partnership property, in which Henry Earle had a technical interest. Story, Partn. § 27; Malley v. Insurance Co., 51 Conn. 222, 247; Livingston v. Blanchard, 130 Mass. 341. In any event, the stock of the rubber company was partnership property with respect to partnership creditors of the new firm. As between the firm and its creditors, the conduct of the members of the partnership with relation to the apparent personal property or stock in trade of the firm made it a fund for the payment of partnership debts. This stock had always been partnership assets, and after Henry Earle became a member the certificates remained as before, and the stock and its dividends were treated upon the books of the firm as before, and the stock was pledged for the new debts of the firm. It is impossible to say that, as against partnership creditors, it was not partnership assets. Elliot v. Stevens, 38 N. H. 311. The status of the case is that Francis, a creditor of Joseph Earle individually, has attached his interest in partnership property, and that subsequently partnership creditors have attached the same property to secure the payment of partnership debts. Their lien is superior; for it is well settled that the right of the creditor of one partner, who had attached partnership property for his debt, is subordinate to the right of the partnership creditors, who have attached subsequently, to have the property applied in payment of firm debts. Bank v. Fitch, 49 N. Y. 539; Filley v. Phelps, 18 Conn. 294; Trowbridge v. Cushman, 24 Pick. 310; Peck v. Schultze, 1 Holmes, 28, Fed. Cas. No. 10,895; Coover's Appeal, 29 Pa. St. 14. The suits of the complainant against Earle Bros. have not yet become, and may never become, judgments. The injunction against Francis should not, therefore, be absolute, but the attachments of the complainant should be adjudged to be liens upon the 76 shares of stock superior to the lien of Francis, and he should be enjoined against a levy of his execution, and his levy should be stayed until the judgments, if any, of the complainant have been paid or satisfied from the partnership property of Earle Bros.; recourse to such property by levy of execution being had first upon the shares standing in the name of Earle Bros.

As thus modified, the decree of the circuit court is affirmed, with costs.