In re SWIFT et al.

(District Court, D. Massachusetts. October 31, 1902.)

No. 2,745.

1. BANKRUPTCY—PROCEDURE—REVIEW OF DECISION OF REFEREE.

In the district of Massachusetts the district court requires no particular formalities to obtain a review by the judge of the orders or other proceedings of a referee in bankruptcy. No formal exceptions need be taken to the referee's findings or rulings, but it is sufficient if the matter in dispute is substantially set out. Nor has the court assigned any precise quantitative weight to findings of fact made by the referee, but that matter is left to be determined in each case, and is dependent upon the character of the evidence on which such findings are based.

2. PARTNERSHIP—MARSHALING ASSETS—JOINT OR SEPARATE ESTATE.

Property originally owned by one partner, and used in the business of the partnership, may be joint or separate estate, as the partners agree, either in writing or by parol; and a parol agreement, if not express, may be shown by a course of conduct, as by entries on the partnership books. In the absence of agreement, it becomes a matter of intention; and, where there is no evidence showing either an agreement or a definite intention on the subject, the court must hold the property to be joint or separate estate as best accords with the general intention of the parties.

3. SAME.

In a contest between the creditors of a bankrupt firm of brokers and the creditors of one of the partners, seats in exchanges, formerly owned by such partner, and still standing in his name, but used in the partnership business, without any definite agreement or intention being shown as to whether they should become property of the firm, *held*, under the facts shown, to have become a part of the joint estate.

In Bankruptcy. On review of decision of referee in marshaling assets between partnership and individual creditors.

See 105 Fed. 4931, 108 Fed. 212, 111 Fed. 503, and 114 Fed. 947.

Freedom Hutchinson, pro se.

Albert S. Hutchinson, for trustee.

Elder & Whitman, for individual creditor.

Bancroft G. Davis, for firm creditor.

LOWELL, District Judge. The question in this case concerns the marshaling of assets between joint and separate creditors. Certain seats in the Boston and New York Stock Exchanges and the Chicago Board of Trade stood in the name of Hodges. Originally they belonged to him. Before 1899 Hodges had done business as Hodges & Co., one Lowry being a nominal or salaried partner. By the rules of the stock exchanges, the seats could not stand in the name of the firm, and the fact that they stood throughout in the name of Hodges throws no light upon their real ownership. In 1899 Hodges entered into an agreement for a partnership, to last six months, subsequently renewed for six months more, with Frederick Swift; Lowry remaining a partner, though he did not sign the written agreement. This was informal, and provided that "the New York and Boston seats standing in the name of Hodges shall draw interest up to the amount of $50,000, which shall be charged to the general expense account."

Counsel for the joint creditors raised certain formal objections, based upon the state of the record. It is sufficient to say that this court has not hitherto required, and does not intend to require hereafter, any particular formalities to be observed in seeking a review by the judge of the orders or other proceedings of a referee. If the matter in dispute is substantially set out, that is enough. No formal exceptions to the referee's findings or rulings need be filed. If this practice shall seem lax to some, the answer is that it has hitherto been found convenient in this district, both for the judge and for the parties, and it has not been abused. A stricter practice has been adopted in some other districts, doubtless because it has been deemed convenient there.

Again, no precise quantitative weight is in this district assigned to the findings of fact made by a referee. If those findings are based largely upon the good or bad faith of witnesses seen and heard by the referee, this court will always bear in mind that the referee's means of judgment are, in an important respect, better than its own. If, on the other hand, the findings depend upon inferences to be drawn from admitted facts, this court's means of judgment are nearly as good as the referee's. The weight to be assigned to the referee's findings in the two cases supposed is by no means the same. No labor-saving formula will determine the weight of the finding, or show just how strongly the court must incline against it in order to reverse it. To say that the finding should not be set aside unless it is "clearly erroneous," "manifestly erroneous," "so manifestly erroneous as to invoke the sense of justice of the court," or "unless it discloses prejudicial errors by the referee, some of which may, without exaggeration, be denominated gross," is to darken counsel, if more is meant than that the court will not set aside the finding unless it is deemed erroneous, after due allowance for the circumstances under which it was made. Artificial and quantitative presumptions of fact are foreign to the spirit of the common law, and the introduction of these presumptions has been rare and unfortunate.

We come next to the merits of the case. Property originally owned by one or more partners, and used in the business of the partnership, may be joint or separate estate, as the partners agree. Originally separate estate, it may be converted into joint estate without formal conveyance, even without any writing, by a parol agreement made between the partners, without any other act. The oral agreement need not be express. It may be proved by a course of conduct; e. g., by entries upon the partnership books. These written entries do not change the title to the goods in question by converting them from separate into joint estate. The entries are rather evidence of an understanding or agreement between the parties, which understanding or agreement operates the conversion. It follows that in the absence of express agreement, written or oral, the separation of joint and separate estate must often depend on circumstantial proof of a state of mind or intention. But it happens not infrequently that the difference between joint and separate estate was not brought to the attention of the partners, and so in fact they had no definite intention in the matter. The court must then determine which

of the possible alternatives—joint or separate estate—better accords with the general intention of the parties. This is the question presented by the case at bar. The intentions of both parties, Hodges and Swift, were vague. The original partnership between Hodges and Lowry was of an uncertain character. Lowry was called by Hodges a "nominal partner,"—a term unknown to the law of partnership. Hodges added that Lowry had no interest in the assets of the business; that he had the right to sign the firm's name, was the "Co." of Hodges & Co. and continued in the firm after Swift entered it. Lowry called himself a "partner," and later a "salaried partner." There is some evidence that his salary was contingent on profits. By the written agreement for the new partnership, he was to share the guarantied profits up to and not exceeding $750 for the term of the partnership. Doubtless Hodges and Lowry supposed and intended the seats to be in the control of Hodges during their first partnership, but, on the other hand, it is likely that they also supposed the firm business in general to be in Hodges' control, and the seats to be liable for the payment of Hodges & Co.'s debts, without preference to Hodges' separate creditors. When the new partnership was formed, consisting of Hodges, Swift, and Lowry, the intention was but little more definite. The written partnership agreement and the bookkeeping entries are inconclusive. The direct statements of understanding or intention made by the parties are contradictory. I do not believe that, at any time before the partnership was dissolved, either Hodges or Swift had a definite intention or understanding that the seats should be either joint or separate estate. Hodges testified that the seats were never transferred to the partnership, and that there had been no change in their ownership; but his evidence, so far as it states facts, and not conclusions of law, amounts only to this: That there was no express transfer (which is admitted), and that Hodges did not intend a transfer. The testimony of a man regarding his past intentions, especially when these were indefinite, is far from conclusive. For some reason, Hodges was testifying with a manifest bias, and the weight of his testimony is fairly balanced by his statement to the opposite effect made to Foreman and Leopold. It is true that these last statements may have meant no more than that the seats were in some sense liable for the firm's debts. The statements are by no means conclusive evidence in favor of the joint creditors. Indeed, but little weight can be attached to any of Hodges' statements in the matter. The referee heard him testify, and has found against him. Without any reflection upon Mr. F. Swift's good faith, it is plain that he understood so little the difference between joint and separate estate as to contradict himself repeatedly. Taken as a whole, his testimony rather leans to the side of the joint creditors, but it is practically worthless.

As has been said, the book entries are ambiguous. The seats were valued at $50,000, and either they were contributed to the firm, as the joint creditors contend, or in some sense their use was contributed, as the separate creditors contend. As interest on his contribution to capital, or as rent for their use, Hodges was to receive $1,500 each

six months. The agreement designated the payment as interest, which fact makes for the contention of the joint creditors, though it is not conclusive. F. Swift procured a loan of $50,000 from E. C. Swift. As between the firm and E. C. Swift, this was treated as the debt of the firm, guarantied by Hodges, but, as between the partners, it seems to have been treated differently. In some sense, it was deemed that F. Swift contributed $50,000 to the firm. The original entries credited Hodges with $1,500 interest on the seats, while $1,500 interest on the note was charged to the firm. The theory of these entries appears to have been that the debt to E. C. Swift was the debt of the firm, and not of one partner more than the other. The original entries were changed by charging Frederick Swift with the interest on E. C. Swift's debt. This made the other entry unfair, though F. Swift was so ignorant of bookkeeping that he did not recognize the unfairness when he testified about the entries. If F. Swift individually paid the interest on the E. C. Swift note, then either Hodges ought to get nothing for his seats, or F. Swift ought to be credited with interest on the $50,000 which, under this supposition, he had contributed to the firm. The former alternative was adopted. Hodges got nothing for his seats, and F. Swift nothing for his contribution, whatever it was. In fact, Hodges received no actual money for his seats, either under the old entry or under the new. If it be said that the entries are unimportant, in view of the written agreement of partnership, it may be answered: First, that a written partnership agreement may be altered by the dealing between the partners (Pilling v. Pilling, 3 De Gex, J. & S. 162); and, second, an ambiguous agreement, like that in the case at bar, will be interpreted by subsequent conduct. On the whole, while the entries are not by any means conclusive, they seem to indicate that the seats were finally treated like the $50,000 cash, and so went into the joint estate. The partnership agreement looks the same way. And this is said to be the presumption in the absence of evidence to the contrary. Story, Partn. § 27. In Kidd v. Johnson, 100 U. S. 617, 25 L. Ed. 769, the controversy arose between the partners and their assigns, not between creditors. No one supposes that the partnership agreement gave F. Swift half or a third of the beneficial interest in the seats. On the dissolution of the firm, in the absence of evidence that they had changed in value, Hodges would have been entitled to them as against F. Swift and Lowry. The seats were practically necessary to the business, and must be either owned or hired. Doubtless firms of brokers can and do exist without seats at the brokers' board, but the facilities of the firm for doing business are thereby much lessened. Originally, the seats were the property of Hodges, but they had been used in the old and going firm of Hodges & Co. when that firm was composed of Hodges and Lowry, and I believe every one supposed them primarily liable for the old partnership debts. Where, as here, a going firm is enlarged, it is to be supposed that joint assets of the old firm become joint assets of the new, rather than the separate estate of one or more of the old partners. Commercial Co. v. Francis, 41 C. C. A. 167, 101 Fed. 16. The Chicago seat was not mentioned in the partnership agreement, and little attention was paid to the matter in briefs or arguments. I think that

its disposition should follow that of the other seats. With some doubt, I have therefore come to the conclusion that the judgment of the referee should be affirmed as to the seats.

As to the Wheelman notes, many of the same considerations apply. They seem to have been property used in the firm's business. The ledger page which contains the account of them contains also, and without distinction, an account of dealings between the Wheelman Company and the new firm. Some of the later Wheelman notes admittedly were joint assets, and I think no sufficient difference is shown between the older notes and the later. As to these, also, the referee's judgment is affirmed.